UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JESUS BARRAGAN-OCHOA** | : | **DOCKET NO. 2:18-cv-0847** |
| **VERSUS** | : | **JUDGE SUMMERHAYS** |
| **C B&I, LLC** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss and/or Motion for a More Definite Statement [doc. 3] filed by defendant CB&I, LLC ("CB&I") in response to the employment discrimination suit [doc. 1] brought by plaintiff Jesus Barragan-Ochoa ("Barragan"). Barragan opposes CB&I's motions and CB&I has filed a reply. Docs. 6, 8.

These motions have been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636. For the reasons provided below, **IT IS RECOMMENDED** that the Motion for a More Definite Statement [doc. 3] be **DENIED** and that the Motion to Dismiss [doc. 3] be **GRANTED IN PART** and **DENIED IN PART**. Barragan's claims of harassment and retaliation under Title VII should be **DISMISSED WITHOUT PREJUDICE** as unexhausted, while his disparate treatment claim should survive.

**I.**
**BACKGROUND**

This action arises from Barragan's alleged treatment during and subsequent termination from, subsequently commuted to a three-day suspension, his employment with CB&I, on or about August 8, 2016. Doc. 1, pp. 3–6. Barragan states that he is Hispanic and was treated less favorably

than his non-Hispanic coworkers at CB&I, where he worked as a rod-busting foreman. *Id.* at pp. 3–5, ¶¶ 7, 11–17. Barragan also alleges other instances of being spoken to and hearing Hispanic employees, generally, spoken about in an insulting manner. *Id.* at pp. 4–5, ¶¶ 17–19. Barragan states that he reported his concerns to a supervisor and was unexpectedly terminated shortly thereafter. *Id.* at pp. 5–6, ¶¶ 20–21. He was told that the termination was due to a write-up by an employee named Seth Schneider. *Id.* at p. 6, ¶ 22. Two days later, CB&I contacted Barragan and told him that the termination had been changed to a three-day suspension without pay. *Id.* at ¶ 23. Again, no explanation was offered and CB&I refused to provide Barragan with any documentation relating to the termination. *Id.* at ¶ 24. When Barragan asked Schneider about the reason for the write-up, Schneider simply replied that he had been instructed to do so and stated that he did not want any hard feelings. *Id.* at ¶ 25.

Barragan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights via a form signed on April 7, 2017. Doc. 1, att. 2. He also completed an intake questionnaire with the EEOC on November 28, 2016.[1] Doc. 6, att. 2. He received a notice of suit rights from the EEOC on March 26, 2018. Doc. 1, att. 3. He then filed suit against CBI in this court on June 26, 2018, alleging that CB&I's actions violated unspecified provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* Doc. 1, pp. 6–7, ¶¶ 26–29.

CB&I now brings the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and Motion for a More Definite Statement under Federal Rule of Civil Procedure 12(e).

---

[1] In his complaint, Barragan states that he completed his EEOC intake questionnaire on November 28, 2016, signed his formal charge of discrimination on November 7, 2017, and filed his formal charge on or about November 28, 2017. Doc. 1, p. 2, ¶ 3 & n. 1. This timeline makes little sense in light of his exhibits. CB&I is not contesting that the charge was timely filed under federal standards, in other words within 300 days of the alleged discriminatory act. Doc. 3, att. 1, p. 11; *see* 42 U.S.C. § 2000e-5. Accordingly, we assume that the charge was filed at some earlier date.

Doc. 3. Specifically, it alleges that Barragan has failed to exhaust his administrative remedies and has not stated a claim for which relief may be granted because he has not exhausted his administrative remedies and because he fails to make out a prima facie case of discrimination or retaliation.[2] Doc. 3, att. 1. In the event that Barragan's retaliation claim survives the Motion to Dismiss, CB&I moves that Barragan be required to clarify whether the claim is based on the termination or suspension. *Id.* at 18.

## II.
### LAW & ANALYSIS

### A. *Rule 12(b)(6) and 12(b)(3) Standards*

#### 1. *Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider matters of which it may take judicial notice, including matters of public record. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) unpublished) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) and *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)).

Such motions are also reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th

---

[2] Although it brings this motion under Rule 12(b)(6) instead of Rule 12(b)(1), CB&I argues that failure to exhaust deprives this court of subject matter jurisdiction over Barragan's claims. Doc. 8, p. 1. In the Fifth Circuit, failure to exhaust administrative remedies before the EEOC prior to bringing a Title VII suit is not a jurisdictional bar, but rather a prudential prerequisite to suit. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 304–07 (5th Cir. 2018). Accordingly, this matter is properly considered under Rule 12(b)(6).

Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor will a complaint suffice if it tends naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (cleaned up). Instead, the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). Accordingly, the court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, 2014 WL 4700254, *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### 2. Rule 12(e)

The Federal Rules of Civil Procedure also authorize a motion for a more definite statement, when "a pleading to which a responsive pleading is allowed . . . is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The court must assess the pleading under the minimum pleading standards under Rule 8 of the Federal Rules of Civil Procedure, which requires, in relevant part, only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006); Fed. R. Civ. P. 8(a)(2). Additionally, due to the availability of extensive discovery on a plaintiff's claims, Rule 12(e) motions are disfavored. *Babcock*, 235 F.R.D. at 633. Accordingly, such motions are inappropriate when the pleading meets the standards of Rule 8, the information is already known to the defendant, or the information sought can otherwise be obtained by discovery. *Id.*

B. *Application*

1. ***Exhaustion of Administrative Remedies***

CB&I concedes that Barragan filed a timely charge of discrimination with the EEOC, but asserts that he did not exhaust any employment discrimination claim relating to harassment or retaliation. Doc. 3, att. 1, pp. 10–11. In response plaintiff attaches a copy of formal EEOC charge, which was attached to the complaint, and his intake questionnaire, which was not.[3] Doc. 6, atts. 1 & 2. He maintains that he properly exhausted all claims through these documents. The intake questionnaire is not verified as required by EEOC regulations, and so cannot be considered a charge. *Patton v. Jacobs Eng'g Grp. Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citing 29 C.F.R. § 1601.7). It was also, by Barragan's admission, filed separately from the formal charge. There is no evidence that CB&I received a notice of charge based on this document or that the EEOC began any part of its investigative or conciliatory efforts based on the unverified questionnaire. Accordingly, absent a showing that the EEOC did begin an investigation based on this questionnaire, that document cannot be construed as part of the formal charge and the allegations therein do not contribute to the scope of exhaustion in this matter. *Cf. Patton*, 874 F.3d at 443–44 (intake questionnaire that was unverified but filed **with** the formal charge, which provided that additional paper could be attached, became part of the formal charge); *Redford v. KTBS, LLC*, 135 F.Supp. 549, 555–57 (W.D. La. 2015) (unverified charge was sufficient to exhaust a claim where the record showed that the EEOC began its investigation based on that charge). Assuming *arguendo* that Barragan could make such a showing, however, we consider the sole relevant, unique allegation in the intake questionnaire as well.

---

[3] A court may take judicial notice of EEOC documents as a matter of public record when deciding a Rule 12(b)(6) motion. *Prewitt v. Continental Automotive*, 927 F.Supp.2d 435, 447 (W.D. Tex. 2013). Accordingly, the court takes judicial notice of the intake questionnaire [doc. 6, att. 2], which was not attached to Barragan's complaint.

Private sector employees seeking relief under Title VII must exhaust their administrative remedies before filing suit by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful conduct, or within 300 days if the party initially institutes proceedings with a state or local agency with the authority to review such claims. *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006); 42 U.S.C. § 2000e-5(e)(1). Once the EEOC issues a right to sue the letter to the party who filed the charge, that party has 90 days to file a Title VII action in the district court. *Price*, 459 F.3d at 598.

"Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). The scope of exhaustion is "defined in light of [the] two competing Title VII policies that it furthers." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

> On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970); *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983). On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. *Id.* at 466. Indeed, "[a] *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Sanchez*, 431 F.2d at 467.

*Id.* at 788–89. Accordingly, the court "interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 789 (internal quotations omitted). A complainant is not irrevocably bound by his failure to check certain boxes in an EEOC form, and the crucial element of the charge is

instead the factual statement contained therein. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

In Barragan's EEOC charge, he checked boxes to indicate that he was complaining of discrimination based on race and national origin. Doc. 1, att. 2, p. 1. He did not check the box for "retaliation." *Id.* In the space provided for particulars, he wrote in relevant part:

> In July 2016, Brian Wilson made me create a paper trail to fire someone, told me to turn in the names of illegal people so we could push at working to get rid of workers there that were not worth the job. On August 8, 2016, I was discharged from my position. . . .
>
> No reason was given for this action taken against me.
>
> I believe I have been discriminated against because of my race, White; and National Origin, Mexican, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that, Wesley Ellis, African American, when he was promoted to foreman, was given the best workers on my crew and Rico Green, General Foreman, African American, wanted me to fire all the people that got hurt and only help his race.

*Id.* The only non-duplicative allegation in his intake questionnaire is that he was "we could not go to 'HR' without a [general foreman]." Doc. 6, att. 2, p. 2. We review these allegations to determine if they were sufficient to exhaust any claims intended in the instant action for harassment or retaliation under Title VII.

### a. Harassment

CB&I first maintains that this charge was insufficient to exhaust a harassment claim. The Supreme Court recognizes hostile work environment harassment claims within Title VII.[4] *Walton-Lentz v. Innophos, Inc.*, 476 Fed. App'x 566, 569 (5th Cir. 2012) (citing *Meritor Sav. Bank, FSB v. Vinson*, 106 S.Ct. 2399 (1986)). A hostile work environment claim must be supported by

---

[4] Barragan notes that, "[a]ncillary to this matter, unlike sexual harassment, racial harassment has not been defined by statute or EEOC regulation." Doc. 6, p. 6. However, claims of race discrimination based on a hostile work environment are recognized under Title VII as is the prima facie standard under Fifth Circuit case law. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

harassment "sufficiently severe or pervasive enough to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Id.* at 570. The court looks to all of the circumstances in considering whether a workplace is sufficiently hostile, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Allegations of disparate treatment are insufficient to exhaust a claim of harassment; the two causes of action are distinct. *Lacy v. Dallas Cowboys Football Club*, 2012 WL 2795979, at *4 (N.D. Tex. Jul. 10, 2012) (citing *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n. 4 (5th Cir. 1994)). Accordingly, the question before the court is whether Barragan's factual statement contains a harassment claim or whether a harassment claim could reasonably be expected to "grow out of" the disparate treatment claim.

Based on the above statements, Barragan informed the EEOC that he (1) was made to create a paper trail to fire someone, (2) was required to turn in the names of undocumented immigrants he knew to be working at CB&I, (3) had his best crew members transferred to another foreman, who was African-American, and (4) pressured by a different African-American foreman to fire injured employees and help African-Americans. Doc. 1, att. 2, p. 1. Barragan also states that he was terminated and that he does not know the reason. *Id.* Nothing here could be read as alleging a hostile work environment claim under Title VII – Barragan alleges no abusive or harassing treatment, or alteration in the conditions of his employment as the result of such treatment. Nor can the court find that a harassment claim was reasonably likely to develop from the disparate treatment allegations. Barragan complains that he was made to engage in employment practices he disagreed with and that African-American foremen were treated better than he was, as a

Hispanic foreman. However, he does not complain of any sort of harassing conduct targeting him on the basis of his race or ethnicity. Accordingly, any harassment claim made under Title VII in the instant action is unexhausted and should be dismissed without prejudice.[5]

### b. *Retaliation*

CB&I next contends that the allegations in the EEOC charge were insufficient to exhaust a retaliation claim. Title VII's anti-retaliation provision states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Although the allegations in Barragan's complaint indicate that he could have been fired on some prohibited basis, and that CB&I prevented employees from bringing their concerns to Human Resources, he does not allege that he was, in any way, opposing an activity made unlawful under Title VII or that he had participated in EEOC proceedings involving CB&I prior to his termination/suspension or any other change in the conditions of his employment. Nor has he provided sufficient information from which a retaliation claim could reasonably be expected to develop. Barragan fails to allege, in any document filed with the EEOC, that he ever complained to someone at CB&I about his employers' actions or otherwise engaged in protected Title VII activity. Accordingly, nothing in his EEOC filings indicated that he wanted the EEOC to investigate a claim of retaliation. The claim is therefore unexhausted and must be dismissed without prejudice under Rule 12(b)(6). There is no basis for requiring Barragan to amend and

---

[5] CB&I argues that the unexhausted claims should be dismissed with prejudice, due to the likelihood that the EEOC will now consider Barragan's claims time-barred and any amendment to reassert the claims would therefore be futile. Doc. 3, att. 1, p. 11. The requirement of filing a timely charge of discrimination with the EEOC is subject to waiver, estoppel, and equitable tolling. *Granger v. Aaron's, Inc.*, 636 F.3d 708, 711 (5th Cir. 2011). We decline to predetermine whether one of these exceptions would apply, and instead recommend that the dismissal be without prejudice to the plaintiff's right to return to court in the event that he does exhaust administrative remedies on these claims. *Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 n. 5 (5th Cir. 2004).

clarify whether the retaliation is based on the termination or three-day suspension. *See* doc. 3, att. 1, p. 18.

### 2. *Failure to state a claim – disparate treatment*

CB&I also maintains that Barragan fails to state a claim for discrimination/disparate treatment under Title VII because he cannot show that he suffered a sufficient adverse employment action to the extent that he is complaining about write-ups, crew selection, and being made to report on workers' immigration status, and because he fails to allege a connection between any protected status and his termination or suspension. Doc. 3, att. 1, pp. 14–17. Barragan argues that he is not required to plead the prima facie elements of employment discrimination in order to overcome a motion to dismiss. Doc. 6, p. 9. In the alternative, he maintains that he has alleged sufficient adverse employment actions. *Id.* at 9–10.

"[T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits." *Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992, 999 (2002). Accordingly, a plaintiff is held to the *Twombly*/*Iqbal* standard above for employment discrimination claims and must state a facially plausible claim for relief. While the plaintiff need not **prove** a prima facie case of employment discrimination at the pleading stage, he "is not exempt from [his] obligation to 'allege facts sufficient to state all the *elements* of [his] claim'" in order to survive a 12(b)(6) motion. *Stone v. La. Dep't of Rev.*, 590 Fed. App'x 332, 339 (5th Cir. 2014) (quoting *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. App'x 363, 370 (5th Cir. 2008)) (emphasis in original). Accordingly, Barragan's argument that he is not required to plead all of the elements of a prima facie claim fails.

Title VII outlaws employment discrimination, including an employer's decision "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment," on multiple bases, including the individual's race and national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff establishes a prima facie case of discrimination under this section by showing that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). For discrimination claims, the term "adverse employment action" is shorthand for an employment decision that negatively affects the compensation, terms, conditions, or privileges of employment. *Stone*, 590 Fed. App'x at 339 (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004)).

In addition to the termination that was commuted to a suspension a short time later, Barragan makes several other allegations of disparate treatment and hostile remarks. Relative to our analysis below, he alleges that, after an African-American coworker was promoted to foreman, Barragan was denied the ability to select his crew while the African-American coworker was permitted to hand-pick his own crew members and Barragan was forced to take the leftovers. Doc. 1, p. 4, ¶ 15. He also complains that he was prohibited from leaving the work site – a privilege granted to the same African-American coworker – in order to retrieve necessary personal protective equipment for himself and his crew. *Id.* at pp. 4–5, ¶¶ 16–17. Finally, he alleges that his general foremen would not allow him to submit write-ups on African-American employees and would rip up these reports rather than send them to Human Resources. *Id.* at p. 4, ¶ 14.

Under Title VII, "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). Instead, an adverse employment action "consists of '*ultimate employment decisions* such

as hiring, granting leave, discharging, promoting, and compensating.'"[6] *Id.* (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)) (emphasis added in *Pegram*). "[N]ot everything that makes an employee unhappy is an adverse employment action[] for purposes of employment discrimination statutes." *Adams v. McKinney Indep. Sch. Dist.*, 2016 WL 760899, at *3 (E.D. Tex. Feb. 26, 2016). However, an allegation that a plaintiff lost his ability to perform essential job functions as a result of the employer's action is sufficient to describe an adverse employment action. *See Thompson v. City of Waco, Tex.* 764 F.3d 500, 502–06 (5th Cir. 2014) (plaintiff police detective pleaded an adverse employment action based on restrictions to his job duties, which essentially consigned him to the role of assistant detective).

Given his position as a foreman, Barragan's allegations of being denied the ability to obtain personal protective equipment for his crew, being prevented from writing up employees, and being disadvantaged in crew selection are conditions that may well have a sufficient impact on Barragan's essential job functions to qualify as adverse employment actions at the pleading stage. Accordingly, Barragan has shown a plausible claim of employment discrimination and the Motion to Dismiss should be denied in this regard. The court need not determine whether any of the other allegations also qualifies as an adverse employment action or whether a sufficient connection is alleged between Barragan's protected status and suspension or termination.

## III.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for a More Definite Statement [doc. 3] be **DENIED** and that the Motion to Dismiss [doc. 3] be **GRANTED IN PART** and **DENIED IN PART**. Barragan's claims of harassment and retaliation under Title VII should

---

[6] *See also McCoy*, 492 F.3d 559–560 (5th Cir. 2007) (explaining that this rule was not impacted by a Supreme Court holding extending adverse employment actions past ultimate employment decisions for Title VII retaliation claims).

be **DISMISSED WITHOUT PREJUDICE** as unexhausted, while his disparate treatment employment discrimination claim should survive.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 7th day of March, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE